UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| APEX ENERGY GROUP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00438-JMS-DKL |
| | ) | |
| DANIEL  SCHWEIHS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Presently pending before the Court is Defendant Daniel Schweihs' Motion to Dismiss for Lack of Personal Jurisdiction.  [Filing No. 12.]  Mr. Schweihs seeks to dismiss Apex Energy Group, LLC's ("Apex") Amended Complaint for defamation and tortious interference with business relationships.  [Filing No. 9.]  For the reasons stated herein, the Court **GRANTS** Mr. Schweihs' Motion to Dismiss.  [Filing No. 12.]

## I.
### BACKGROUND

The Court draws the following factual background from the evidence submitted by the parties.  Apex is an Indiana limited liability company that conducts business in Indianapolis and Fort Wayne.  [Filing No. 18-1 at 1.]  Mr. Schweihs is a resident of Virginia with a fifty percent ownership interest in Window Universe, LLC ("Window Universe"), a Virginia limited liability company.  [Filing No. 14-1 at 1-2.]  Window Universe has an eighty percent ownership interest in Boilermaker Windows, LLC ("Boilermaker Windows"), an Indiana limited liability company; Drew and Leslie Charters own the remaining twenty-percent.  [Filing No. 14-1 at 2.]  Boilermaker Windows owns and operates a franchise business under the Window Universe name and mark to

sell and install windows and doors.  [Filing No. 14-1 at 2.]  Mr. Schweihs alleges that he has never

been an employee, owner, officer, or manager of Boilermaker Windows.  [Filing No. 14-1 at 2.]

Apex claims that Windows Universe is a competitor of Apex in the Indianapolis market.  [Filing

No. 18-1 at 2.]

Mr. Schweihs maintains the website www.thewindowdog.com (the "website") where he

provides advice for purchasing replacement windows and product reviews for dozens of

replacement window brands across the country.  [Filing No. 14-1 at 2.]  Apex claims that due to

Mr. Schweihs' defamatory comments on the website, Apex lost sales and suffered damage to its

reputation.  [Filing No. 18-1 at 2.]  Mr. Schweihs admits that on a few occasions, he responded to

comments posted by visitors on the website about Insignia Windows, a product distributed by

Apex.  [Filing No. 14-1 at 3-6.]  For example, on July 2, 2014, Mr. Schweihs responded to a thread

where he claimed there was nothing unique about Insignia Windows, except the sales pitch that

comes with it.  [Filing No. 14-1 at 3-6.]  On July 8, 2014, Mr. Schweihs commented on another

thread that Insignia Windows were "not exclusive to the company," "not remarkable," and "not

worth $600+ per window."  [Filing No. 14-1 at 6.]  At a later date, Mr. Schweihs commented on

the website that "Apex uses a 'manipulative sales pitch' and that its 'sales tactics leave quite a bit

to be desired,'" but deleted those comments upon receiving a letter from Apex's attorney.  [Filing

No. 14-1 at 7.]  Mr. Schweihs states in his affidavit that his comments were not directed specifically

toward any practice taking place in Indiana.  [Filing No. 14-1 at 7.]  He claims that during the last

thirty days, the website has received 32,053 hits, where 557 hits (1.8 percent), were from Indiana.

[Filing No. 14-1 at 3.]  He further alleges that for the last six months, the website received 145,492

total visits, where 2,808 (1.9 percent), were from Indiana.  [Filing No. 14-1 at 3.]

Additionally, Mr. Schweihs alleges that his sole connection with Indiana is that he graduated from Purdue University in West Lafayette, Indiana, in December 2003; he owns no property in Indiana and has neither worked nor resided in Indiana since February or March 2004. [Filing No. 14-1 at 1.]  Apex further alleges that Mr. Schweihs placed on his website, Twitter account, and Facebook account that he was going to attend a home show in Indianapolis between January 26 and January 31, 2015.  [Filing No. 18-1 at 2-3.]

## II.
### APPLICABLE LEGAL STANDARD

When a defendant moves to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of showing that personal jurisdiction over the defendant exists."  *Claus v. Mize,* 317 F.3d 725, 727 (7th Cir. 2003).  When, as here, the Court "rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing . . . the plaintiff 'need only make out a prima facie case of personal jurisdiction.'"  *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002)).  Factual disputes, however, are resolved in the plaintiff's favor.  *Id.*

"A federal district court's personal jurisdiction over a defendant is established in a diversity-jurisdiction case . . . only so long as the defendant is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  *Northern Grain Mktg., LLC v. Greving,* 743 F.3d 487, 491 (7th Cir. 2014).  Indiana Trial Rule 4.4(A) serves as Indiana's long-arm provision and expands personal jurisdiction to the full extent permitted by the Due Process Clause.  *See LinkAmerica Corp. v. Cox,* 857 N.E.2d 961, 965–66 (Ind. 2006).  "Thus, the statutory question merges with the constitutional one—if [Indiana] constitutionally may exercise personal

jurisdiction over a defendant, its long-arm statute will enable it to do so." *Northern Grain,* 743 F.3d at 492.

"The federal constitutional limits of a court's personal jurisdiction in a diversity case are found in the Fourteenth Amendment's due-process clause." *Id.* "[F]ederal constitutional law draws a sharp and vital distinction between two types of personal jurisdiction: specific or case-linked jurisdiction, and general or all-purpose jurisdiction." *Abelesz v. OTP Bank,* 692 F.3d 638, 654 (7th Cir.2012). "If the defendant's contacts are so extensive that it is subject to general personal jurisdiction, then it can be sued in the forum state for any cause of action arising in any place. More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID, Inc. v. GoDaddy Group, Inc.,* 623 F.3d 421, 425 (7th Cir. 2010).

### III.
### DISCUSSION

Mr. Schweihs moves to dismiss Apex's Amended Complaint on the basis that no personal jurisdiction exists over him. [Filing No. 13 at 1.] First, Mr. Schweihs argues that he lacks sufficient contacts with Indiana to establish general jurisdiction. [Filing No. 13 at 1.] Second, he claims that his comments about Apex on his website do not target Apex's business activities in Indiana. [Filing No. 13 at 1.] The Court, in turn, will discuss the issues as the parties have addressed them.

#### A. General Jurisdiction

Mr. Schweihs first argues that he lacks sufficient contacts with Indiana to be sued here for the comments he made on his website. [Filing No. 13 at 4.] Mr. Schweihs argues that he has not lived or worked in Indiana since he graduated from Purdue University in 2003 and owns no real

or personal property in Indiana.  [Filing No. 13 at 4.]  He claims that he owns fifty percent of Windows Universe, a Virginia limited liability company, which in turn owns eighty percent of Boilermaker Windows, and Indiana limited liability company.  [Filing No. 13 at 5.]  Thus, contrary to Apex's allegations, Mr. Schweihs argues that he has no direct ownership and is not a member of any Indiana company.  Mr. Schweihs alleges that even if he were considered a member of Boilermaker Windows, this Court has reaffirmed that a shareholder is not personally liable in Indiana where the corporation has sufficient contacts, unless he personally took actions in Indiana. [Filing No. 13 at 5.]

In response, Apex states that Mr. Schweihs "holds an ownership interest in an Indiana company that competes with [Apex]" but provides no further support and cites no authority.[1] [Filing No. 17 at 3.]  Apex goes on to state that Mr. Schweihs has substantial connections with Indiana because he previously lived and went to school in Indiana, and he traveled to a home show in Indianapolis for his business.  [Filing No. 17 at 6.]

In reply, Mr. Schweihs argues that attending school and living in Indiana over a decade ago and traveling to a home show in Indianapolis do not give rise to the continuous and systematic contacts required for general jurisdiction.  [Filing No. 19 at 4.]  He states that his attendance at the Indianapolis home show was a commercial activity and temporary visit, which is insufficient to establish personal jurisdiction.  [Filing No. 19 at 4.]

Unlike specific jurisdiction, general jurisdiction permits a defendant to be sued in the forum state regardless of the subject matter of the litigation.  *Purdue,* 338 F.3d at 787.  "General

_____

[1] Apex's response does not specifically address Mr. Schweihs' general jurisdiction argument and the Court could well find that any argument by Apex in support of general jurisdiction is waived. However, the Court finds that some of Apex's allegations might be construed as argument in support of general jurisdiction, and the Court will so construe them.

jurisdiction is permitted only where the defendant has 'continuous and systematic general business contacts with the forum that it would be "fundamentally fair to require it to answer in [that forum] in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Id.* (emphasis in original) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  Defendant's "affiliations with the state [must be] so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, – U.S. –, 131 S. Ct. 2846, 2851 (2011) (*see International Shoe*, 326 U.S., at 317, 66 S.Ct. 154).  The general jurisdiction standard is rigorous because "the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then it may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *uBID*, 623 F.3d at 426.

The Court finds that general jurisdiction does not exist here.  Apex's allegations that Mr. Schweihs attended school over a decade ago, lived in Indiana during that period of time, and visited Indianapolis for a home show in January 2015 hardly meet the rigorous standard of continuous and systematic contacts required to hale Mr. Schweihs into an Indiana court.  Apex provides no additional facts to support the conclusion that Mr. Schweihs has maintained a continuous presence in Indiana sufficient to render him essentially at home.

In addition, Apex's allegation that Mr. Schweihs has an ownership interest in a company that does business in Indiana is unavailing.  Mr. Schweihs' affidavit clarifies that he has no direct ownership in an Indiana company; instead, he states that he owns fifty percent of Windows Universe, a Virginia limited liability company, which in turn has an eighty percent ownership interest in Boilermaker Windows, an Indiana limited liability company.  Mr. Schweihs' affidavit further states that Windows Universe and Boilermaker Windows are two separate and distinct legal

entities. Apex, in turn, does not dispute Mr. Schweihs' allegations pertaining to his lack of a direct ownership interest in Boilermaker Windows and fails to address how the Court still has personal jurisdiction despite the companies' ownership structures. The Seventh Circuit Court of Appeals has instructed that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone. *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000); *see, e.g., Shaffer v. Heitner*, 433 U.S. 186, 213 (1977) (finding that personal jurisdiction is insufficient when a defendant owns stock in a corporation located in the forum state and that property is neither the subject matter of the litigation nor related to the underlying cause of action). In addition, other district courts have found that personal jurisdiction does not extend to members of a limited liability company unless the members have minimum contacts with the forum state. *See Wachovia Sec., LLC v. NOLA, LLC*, 248 F.R.D. 544, 547 (N.D. Ill. 2008) (finding that the court lacked personal jurisdiction over a witness who failed to appear in a deposition because personal jurisdiction does not automatically extend to members of a limited liability company); *Progressive Minerals LLC v. Rashid*, 2008 WL 4416408, at *4 (N.D.W. Va. 2008) (finding that a letter from a managing member of an LLC was enough to "purposely [avail] himself of the privilege of conducting activities within the state of West Virginia"); *Mountain FUnding, LLC v. Blackwater Crossing, LLC*, 2006 WL 1582403, at *2 (W.D.N.C. 2006) ("Personal jurisdiction over a limited liability company does not automatically extend to its members," but rather "the members must have the requisite minimum contacts with the forum state independently of the limited liability company.") Here, the only allegation Apex has made is that Mr. Schweihs has an ownership interest in a limited liability company that has an ownership interest in an Indiana company that competes with Apex and that Mr. Schweihs has

alleged that he actively participated in that business.  Without more, the Court finds that it does not have general jurisdiction over Mr. Schweihs.

### B.  Specific Jurisdiction

Mr. Schweihs alleges that Apex fails to establish specific jurisdiction because the conduct at issue was not targeted in Indiana and Mr. Schweihs did now know that the effects of the conduct would be felt in Indiana.  [Filing No. 13 at 6.]  Mr. Schweihs cites to Seventh Circuit authority to support his allegation that Apex must show that Mr. Schweihs "expressly aimed" or targeted Indiana.  [Filing No. 13 at 6.]  He claims that Apex acknowledges that the posts made on the website are transmitted across the internet and are accessible to people around the world.  [Filing No. 13 at 7.]  Further, he claims that the website contains links to assist potential window replacement buyers in all fifty states and not specifically in Indiana.  [Filing No. 13 at 7.]  With respect to internet-based cases, Mr. Schweihs argues that Apex has failed to meet the relevant inquiry of whether Mr. Schweihs purposely exploited or targeted the forum state's market.  [Filing No. 13 at 8.]  Accordingly, he states that simply maintaining a website that is accessible to the residents of Indiana and alleging that he caused harm through the website is not sufficient.  [Filing No. 13 at 8.]  Regarding his alleged defamatory statements, Mr. Schweihs claims his comments in response to the visitors' inquiries contain no information specific to Apex or the Indiana market.  [Filing No. 13 at 9.]  He claims that his comments were made in response to inquiries from the website's visitors and that the website targets a general audience rather than the 1.8 percent of visitors from Indiana.  [Filing No. 13 at 13.]

In response, Apex recites the facts of *Calder v. Jones*, 465 U.S. 783 (1984), and attempts to analogize it to the situation here.  Apex claims that *Calder* held that the defendants' tortious actions were expressly aimed at the forum state because the defendants knew that their actions

would impact the plaintiff and that the injury would be felt by the plaintiff in the state where she lives and works. [Filing No. 17 at 3.]    Apex claims that Mr. Schweihs attempts to apply the language of the Seventh Circuit's express aiming test without considering how the test was applied in *Calder*. [Filing No. 17 at 5.] Apex claims that the defamatory comments on the website were widely circulated in Indiana because of the 2,808 website hits from Indiana in the past six months. [Filing No. 17 at 5.] It claims that damaging Apex's reputation gave Mr. Schweihs a competitive advantage over Apex in the state. Apex further states that Mr. Schweihs' motivation for starting the website and writing about replacement windows is because of his visit to the Indianapolis home show. [Filing No. 17 at 6.]

In reply, Mr. Schweihs makes several distinctions between *Calder* and the case at issue. [Filing No. 19 at 2.] First, he states that the injured party in *Calder* was an individual who resided and worked in the forum state, whereas Apex is a limited liability company that sells replacement windows in thirteen different markets[2] across the nation. [Filing No. 19 at 2.] Thus, he claims that Apex's alleged damages from the defamation suit would not be attributed solely to Indiana, but any of the other states would be subject to jurisdiction per Apex's express aiming test. [Filing No. 19 at 2.] Second, Mr. Schweihs states that the reporter who wrote the defamatory article in *Calder* flew to the forum state and interviewed sources. [Filing No. 19 at 2.] He claims that in the present case, there is no similar contact with Indiana, and that Mr. Schweihs' visit to the Indianapolis home show in January 2015 bears no relation to the alleged defamatory comments on the website. [Filing No. 19 at 2.] Third, Mr. Schweihs claims that in *Calder*, the number of print copies circulated in the forum state was twice the number circulated in other states. [Filing No.

---

[2] Mr. Schweihs does not explain the meaning of "markets," and Apex's affidavit merely states that it "operates in markets across the country." [Filing No. 18-1 at 1.] The Court finds that this is enough to conclude that Apex operates in locations outside of Indianam further undermining a notion that Indiana was targeted.

19 at 3.] He claims that the number of site visits in Indiana from the past six months is less than two percent of the website's total hits, and unlike *Calder*, Mr. Schweihs' website is not widely circulated in Indiana. [Filing No. 19 at 3.] Finally, Mr. Schweihs alleges that a relationship between the defendant, the forum, and the litigation does not exist in the present case. [Filing No. 19 at 2.]

For a state to exercise jurisdiction, a nonresident's physical presence within the territorial jurisdiction of the Court is not required, though the nonresident generally must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citing *International Shoe Co.,* 326 U.S. at 316). First, the relationship must arise out of contacts that the "defendant *himself* " creates with the forum state. *Id*. at 1122 (emphasis in original) (*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 468 (1985)). Second, the Court's "minimum contacts" analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.* (citations omitted).

Where the plaintiff's claims are for intentional torts, constitutionally sufficient contacts can be imputed to a defendant if the defendant's actions from the intentional tort were purposely directed at the forum state. *See Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (*see Calder* 465 U.S. at 789-90). The Seventh Circuit states that *Calder* creates three requirements for personal jurisdiction under this type of claim: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703 (citations omitted). In addition, although no special test exists for internet-based cases in determining the "expressly aiming" analysis, the Court focuses on whether the defendant

10

has purposely exploited the Indiana market beyond the availability of the website in the forum state. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802-03 (7th Cir. 2014) (citations omitted).

The Court finds the Mr. Schweihs did not expressly aim his activities at Indiana. Apex's arguments focus on the parallels between the facts between in *Calder* and the case at issue, but Apex does not point to facts indicating that Mr. Schweihs expressly aimed his alleged tortious conduct at Indiana. *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445-46 (7th Cir. 2010) ("'express aiming' remains the crucial requirement when a plaintiff seeks to establish personal jurisdiction under *Calder*"). Apex merely argues that Mr. Schweihs admits that his website was widely circulated in Indiana, and that it received 2,208 hits from Indiana in the past six months. However, maintaining a website that that has received visitors from Indiana does not show that Mr. Schweihs' alleged tortious conduct was expressly aimed at Indiana. *See Mobile Anesthesiologists Chicago, LLC,* 623 F.3d at 446 (finding that defendant's operation of a website that could be accessed in Illinois was not sufficient to support personal jurisdiction); *see Advanced Tactical Ordnance Sys.,* 751 F.3d at 803 ("the operation of an interactive website does not show that the *defendant* has formed a contact with the forum state" (emphasis in original)).

Further, Apex has provided no evidence to show that Mr. Schweihs' comments purposely exploited the Indiana market. Out of the total visits from the past six months, Mr. Schweihs states that less than two percent of the visitors were from Indiana. No evidence supports whether those visitors specifically viewed the alleged defamatory comments and whether the comments caused them not to purchase Apex's products, nor whether Mr. Schweihs knew that his comments would

cause Apex commercial or reputational harm.  Thus, the Court concludes that no specific jurisdiction exists.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **GRANTS** Mr. Schweihs' Motion to Dismiss for Lack of Personal Jurisdiction, [Filing No. 12], and **DISMISSES** Apex's claims for defamation and tortious interference against Mr. Schweihs **WITHOUT PREJUDICE** for lack of personal jurisdiction.  Final judgment shall issue accordingly.

Date: September 23, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Brian P. O'Connor
SANTEN & HUGHES
bpo@santen-hughes.com

Charles E. Reynolds
SANTEN & HUGHES, LPA
cer@santen-hughes.com

Dane Andrew Mize
SKILES DETRUDE
dmize@skilesdetrude.com